**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER ZIMMERMAN and ENRIQUE MACIAS, on behalf of themselves and all other persons similarly situated, known and unknown, <br><br> Plaintiffs, <br><br> v. <br><br> JWCF, LP d/b/a/ BAKER INSTALLATIONS, and SMC COMMUNICATIONS OF ILLINOIS, LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 10-cv-7426 <br><br> Honorable Amy J. St. Eve |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Christopher Zimmerman and Enrique Macias, on behalf of themselves and all other persons similarly situated, filed this lawsuit against Defendants JWCF, LP (d/b/a Baker Installations) ("JWCF") and SMC Communications of Illinois, LLC ("SMC LLC"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1, et seq., and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq. On January 24, 2011, Defendant JWCF filed a motion to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). The Court thereafter allowed the parties to engage in limited discovery with respect to personal jurisdiction. Defendant JWCF subsequently re-filed its motion to dismiss for lack of personal jurisdiction. For the following reasons, the Court grants JWCF's motion.

## FACTUAL BACKGROUND

JWCF, a Pennsylvania limited partnership with its headquarters and principal place of business in McMurray, Pennsylvania, provides cable installation services in several states for major cable system operators such as Comcast, Cox Communications, and Time Warner pursuant to non-exclusive, written subcontractor service agreements. (R. 57-1, Baker Decl. ¶¶ 6-7.) SMC LLC is an Illinois limited liability company, but is no longer actively engaged in business in Illinois. (*Id.* ¶ 28.)[1]

## I. History of Baker, JWCF, SMC Inc., and SMC LLC

Baker Inc. ("Baker"), a Pennsylvania corporation that is not a party to this case, entered the Chicago cable market in 2003 by teaming up with Bob Sherry, a citizen and resident of Illinois. (Baker Decl. ¶¶ 19-20.) At that time, Mr. Sherry was already operating a successful cable installation business in Illinois as a subcontractor for Comcast, and he had an established work force of cable installation technicians. (*Id.* ¶ 20) Baker had a relationship with Comcast in other locations, and Comcast wanted Baker to work with Sherry in the Illinois market. (*Id.*) For the next few years, Mr. Sherry ran the day-to-day operations of the cable installation operation in Illinois, and Baker Inc. provided "back office" support. (*Id.* ¶ 21.) When Baker ceased active operations in early 2006, JWCF took over Baker's active business operations in several states. (*Id.* ¶ 22.) JWCF entered into a written licensing agreement with Baker, pursuant to which JWCF obtained the right to use the "Baker Installations" trade name and trademark. (*Id.*)

---

[1] SMC LLC ceased operating in Illinois in 2010 as a result of the termination of SMC LLC and Comcast's relationship.

JWCF briefly took over Baker's role in the Illinois market in 2006, but Mr. Sherry continued to run the day-to-day operations in Illinois. (*Id.* ¶ 23.) In mid-to-late 2006, JWCF established a Pennsylvania corporation, SMC Communications, Inc. ("SMC Inc."), to separate JWCF's business in other markets from the business in Illinois (and Minnesota) in which it was working with Mr. Sherry. (*Id.* ¶ 24.) After creating SMC Inc., JWCF ceased its cable installation work in Illinois and subcontracted its Illinois cable work to SMC Inc. pursuant to a written agreement. (*Id.* ¶ 26.) JWCF's subcontracting relationship with SMC Inc. ended in 2007, and JWCF has not done any cable installation work in Illinois since that time. (*Id.* ¶ 27.)

SMC LLC was formed in 2007. (*Id.* ¶ 28.) JWCF, in its capacity as proprietor of the "Baker Installations" brand name, entered into a written licensing agreement with SMC LLC, granting SMC LLC a limited and non-exclusive license to use the "Baker Installations" brand name. (*Id.* ¶ 30.) SMC LLC took over the Illinois cable installation work from SMC Inc. in 2008 (*id.* ¶¶ 31), but SMC LLC and JWCF did not enter into a subcontracting relationship. (*Id.* ¶ 35.) Rather, SMC LLC directly entered into a series of preferred vendor agreements with Comcast, to which JWCF is not a party. (*Id.* ¶ 31.)

## II.     JWCF and SMC LLC During the Relevant Time Period[2]

JWCF is not incorporated or registered to do business in Illinois, does not maintain any offices in Illinois, does not own any real or personal property in Illinois, does not maintain any bank accounts in Illinois, does not advertise or solicit business in Illinois and has not appointed an agent for service of process in Illinois. (Baker Decl. ¶¶ 10-11; 13-17.) JWCF has no partners

---

[2] The relevant time period in Plaintiffs' Complaint is August 2008 to April 2010. (Compl. ¶¶ 6, 8.)

or employees who are citizens of Illinois. (*Id.* ¶ 12.) JWCF never entered into an agreement with SMC LLC to provide cable installation services in Illinois, and SMC LLC never performed any cable installation services for JWCF. (*Id.* ¶ 35.)

JWCF is the sole member of SMC LLC. (*Id.* ¶ 38.) SMC LLC is a "manager-managed" limited liability company, and the managers of SMC LLC (Wade Baker, James Mazur and Chad Baker) are all citizens and residents of Pennsylvania. (*Id.* ¶¶ 39-41.) None of the managers of SMC LLC has ever had any responsibility or involvement in its day-to-day operations. (*Id.* ¶¶ 40-41.) Mr. Sherry and James Allen ran SMC LLC's day-to-day operations in Illinois. (*Id.* ¶ 42.) Neither Mr. Sherry nor Mr. Allen had a role in or received compensation from JWCF, and neither had any involvement with JWCF's operations in other states. (*Id.* ¶ 43.) SMC LLC employed cable installers in Illinois, including Plaintiffs, who reported directly to supervisors that also worked for SMC LLC in Illinois. (*Id*. ¶ 44.)

JWCF and SMC LLC maintain separate bank accounts and separate books. (*Id.* ¶ 48.) SMC LLC rented the warehouse and office facilities it used in Illinois from a third party unrelated to JWCF. (*Id.* ¶ 50.)

JWCF filed tax returns with the Illinois Department of Revenue for the years 2007 through 2010, and SMC LLC did not file tax returns with the Illinois Department of Revenue. (R. 60-2, Baker Dep. 102:8-104:17.) According to JWCF, SMC LLC is a single-member LLC, which is classified as a "disregarded entity" under federal and state tax laws. (*Id.* ¶ 65.) Therefore, for tax purposes, SMC LLC is treated as a sole proprietor and cannot file tax returns separately from JWCF. (*Id*.) Because SMC LLC is a disregarded entity, JWCF's state and federal tax returns for the years 2008 through 2010 include the results of SMC LLC's operations

in Illinois, including the taxes SMC LLC paid in Illinois. (*Id.*) Even though the Illinois taxes were reported on JWCF's returns, SMC LLC paid all of the Illinois taxes. (*Id.*)

JWCF provided various clerical and administrative services to SMC LLC. JWCF printed checks drawn on SMC LLC's bank account to pay SMC LLC's vendors, and printing and sending invoices to SMC LLC's customers. (*Id.* ¶ 51.) SMC LLC paid its own expenses from its separate bank account, either directly to the vendors or by reimbursing JWCF if JWCF paid the bill in the first place. (*Id.* ¶ 49; Baker Dep. 108:6-110:3; Baker Dep. Ex. 9.) Although JWCF printed the checks, SMC LLC issued Plaintiffs' paychecks and W-2s. (*Id.* ¶ 34.) JWCF also processed payroll for SMC LLC according to policies SMC LLC set, and the payroll was generated from data that SMC LLC employees in Illinois entered into a computer program. (*Id.* ¶ 52; R. 60-3, Bronzenec Decl. ¶¶ 7-8.) JWCF's employees maintained SMC LLC's general ledger and generated SMC LLC's monthly income and balance sheet. (Baker Dep. 108:2-109:5; R. 60-3, McClain Dep. 79:14-22.)

Additionally, JWCF provided human resources support to SMC LLC by placing employment advertisements on websites such as monster.com and for open positions with "Baker Installations." (*Id.* ¶ 54.) SMC LLC reimbursed JWCF for the costs of those ads. (*Id.*) JWCF referred any leads on employment candidates in Illinois that came in from the Baker Installations website or the ads to SMC LLC although JWCF would sometimes conduct initial screening interviews. (*Id.* ¶ 55.) JWCF also filed paperwork relating to drug tests and background checks. (*Id.* ¶¶ 56.) SMC LLC was free to reject candidates, and it made all employment decisions relating to its business, including the decision to hire, fire, promote and discipline all employees, to assign work and to determine the rate and method of compensating

employees.  (*Id*. ¶ 55.)

SMC LLC employees completed online training through a portal that JWCF maintained. (*Id.* ¶ 58; R. 63-3, Zimmerman Decl. ¶ 5.)  The training website does not contain the JWCF name, but rather contains the "Baker Installations" name.  (*Id*.)  Plaintiff Zimmerman was instructed to call JWCF if he had issues with his compensation.  (Zimmerman Decl. ¶ 3.)  SMC LLC paid management fees to JWCF for the administrative services JWCF performed.  (Baker Decl. ¶ 59.)

In 2008, JWCF "dispatched" its Vice President of Client Relations, Marianne McClain, to SMC LLC to assist Messrs. Sherry and Allen in running SMC LLC's cable operation.  (*Id.* ¶ 60.)  McClain served as the Vice President of Client Relations of SMC LLC,[3] while at the same time continuing to hold the same title with JWCF.  (*Id.*)  In her capacity as Vice President of Client Relations of SMC LLC, she reported to the three managers of SMC LLC–Mr. Mazur, Mr. Wade Baker and Mr. Chad Baker.  (McClain Dep. 26:9-16.)  She did not report to SMC LLC's Vice President of Operations, Mr. Sherry, but rather she and Mr. Sherry worked together as equals in overseeing the general management and operations of SMC LLC.  (McClain Dep. 38:14-24; 40:1-4; R. 57-3, McClain Decl. ¶ 11.)  JWCF issued paychecks to Ms. McClain during the time period, but SMC LLC reimbursed JWCF for her salary.  (McClain Dep. 42:11-17; 74:4-13; Baker Decl. ¶ 61.)  SMC LLC also paid travel and other expenses Ms. McClain incurred on SMC LLC's behalf.  (Baker Decl. ¶ 61; McClain Decl. ¶ 8.)  When her travel involved work for

---

[3] In JWCF's Reply brief, it states that Ms. McClain's title at SMC LLC was Vice President of Operations.  (R. 63, JWCF's Reply at 5.)  Because Ms. McClain's sworn Declaration states that her title was Vice President of Client Relations, however, the Court has adopted that explanation.

both SMC LLC and JWCF, she segregated the expenses accordingly and obtained reimbursement from the appropriate company. (McClain Decl. ¶ 10.)

During the time Ms. McClain served as Vice President of Client Relations of SMC LLC, she attended executive meetings with Mr. Mazur and others either face-to-face at JWCF's office in Pennsylvania or by phone approximately two to four times per month to discuss general business topics as they related to JWCF and SMC LLC. Ms. McClain testified that topics of discussion with respect to SMC LLC related to its work force, overall information in general and client issues. They may also have discussed issues related to SMC LLC's payroll. (McClain Dep. 27:24-38:13.) In addition, Ms. McClain attended market manager meetings at JWCF's office for the purpose of discussing how the markets operated and potential improvements. (*Id.* 43:18-44:14.) Mr. Allen and Mr. Sherry also also attended two or three of those meetings, representing SMC LLC. (*Id.* 43:3-11; 44:11-14.)

From 2007 to 2010, Mr. Wade Baker, a limited partner and CFO of JWCF and also a manager of SMC LLC,[4] traveled to Illinois approximately four times each year to attend a personal development coaching program. (*Id.* ¶ 62.) During those trips, which were a day and a half in duration, he would stop at SMC LLC's office for a short visit, but he did not conduct any formal meetings, and he generally considered his visits to be "social calls." (*Id.* ¶ 63.) In 2009, Mr. Baker traveled to Illinois to meet with Ms. McClain, Mr. Sherry and Mr. Mazur at SMC LLC in his capacity as manager of SMC LLC, during which they discussed SMC LLC's

---

[4] The meaning of the term "manager" in the context of the organizational structure of an Illinois LLC bears mentioning here. Illinois law provides that an LLC may vest management of the company in either managers (a "manager-managed LLC") or in members (a "member-managed LLC"). *See* 805 ILCS 180/5-5. This does not mean, however, that the "managers" have operational duties with the company.

financial projections and planning.  (*Id.* ¶ 64.)  Mr. Baker rarely communicated with Mr. Sherry although, occasionally, in his capacity as manager of SMC LLC, he would discuss high-level strategic issues relating to SMC LLC.  (*Id.* ¶ 47.)  They would not discuss day-to-day operational issues.  (*Id.*)  Mr. Baker has no recollection of ever communicating with Mr. Allen regarding SMC LLC's operations.  (*Id.* ¶ 46.)  Mr. Mazur, a manager of SMC LLC, traveled to Illinois on occasion to attend industry events on behalf of SMC LLC.

## LEGAL STANDARD

A motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant.  *See* Fed.R.Civ.P. 12(b)(2); *Central States v. Phencorp Reins. Co.*, 440 F.3d 870, 875 (7th Cir. 2006); Fed.R.Civ.P. 12(b)(2). In ruling on a Rule 12(b)(2) motion, courts may consider matters outside of the pleadings.  *See Purdue Research Found. v. Sanofi-Sythlabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  When a court determines a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, the plaintiff must make a *prima facie* case of personal jurisdiction.  *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010); *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).  As such, the plaintiff bears the burden of establishing that personal jurisdiction exists.  *See uBID, Inc.*, 623 F.3d at 423-24; *GCIU-Emp'r Ret.*, 565 F.3d at 1023.  In determining whether the plaintiff has met its burden, a court must resolve all factual disputes in the plaintiff's favor.  *See GCIU-Emp'r Ret. Fund*, 565 F.3d at 1020 n.1.  Courts will, however, accept as true any facts contained in the defendant's affidavits that the plaintiff does not refute.  *Id.*; *see also Purdue Research Found.*, 338 F.3d at 783 (if the defendant submits affidavits or other evidence in opposition to the

plaintiff's motion, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction").

The FLSA does not authorize nationwide service of process. *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992). In a federal question case "where federal statutes do not authorize nationwide service of process, a federal court in Illinois may exercise personal jurisdiction over a defendant if it would be permitted to do so under the Illinois long-arm statute." *uBID, Inc.*, 623 F.3d at 425 (citing Fed.R.Civ.P. 4(k)(1)(A)). "A state's exercise of personal jurisdiction is also subject to the demands of the Fourteenth Amendment's due process clause. Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge." *Id.* (citing *State of Illinois v. Hemi Group LLC*, 622 F.3d 754, 756-57 (7th Cir. 2010) and *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)); *see also Philos Techs., Inc. v. Philos & D, Inc*., 645 F.3d 851, 855, n.2 (7th Cir. 2011).

It is well-established that the due process test for personal jurisdiction requires that a defendant have minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945) (quotations and citations omitted); *uBid*, *Inc*., 623 F.3d at 425 (citation omitted). There are two types of personal jurisdiction: general and specific. *See Helicopteros Nactionales de Colombia v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868 (1984); *uBid, Inc.*, 623 F.3d at 425. "General jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State, and is permitted only where the defendant conducts continuous and systematic general business within the forum state."

*GCIU-Emp'r Ret.*, 565 F.3d at 1023; *see also Helicopteros Nacionales de Colombia*, 466 U.S. at 416. Specific jurisdiction is narrower and "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *GCIU-Emp'r Ret.*, 565 F.3d at 1023.

## ANALYSIS

### I. General Jurisdiction

The Seventh Circuit has emphasized that the standard for general jurisdiction is "demanding" and requires the defendant to have such "extensive contacts with the state that it can be treated as present in the state for essentially all purposes." *uBID*, 623 F.3d at 426. In determining whether to exercise general jurisdiction over a defendant, courts typically apply a five-part test: "(1) whether and to what extent the defendant conducts business in the forum state; (2) whether the defendant maintains an office or employees within the forum state; (3) whether the defendant sends agents into the forum state to conduct business; (4) whether the defendant advertises or solicits business in the forum state; and (5) whether the defendant has designated an agent for service of process in the forum state." *See Corus Int'l Trading Ltd. v. Eregli Dermir Ve Celik Fabrikalari, T.A.S.*, 765 F. Supp.2d 1079, 1083 (N.D. Ill. 2011) (citing, among other cases, *Helicopteros Nacionales de Colombia*, 466 U.S. at 416).

Plaintiffs argue that JWCF's relationship and involvement with its Illinois subsidiary, SMC LLC, confers personal jurisdiction over JWCF in Illinois.[5] They argue that SMC LLC was

---

[5] Plaintiffs do not argue that JWCF, when analyzed separate and apart from SMC LLC, has sufficient contacts with Illinois such that the Court could exercise general jurisdiction over it. Therefore, the Court need not analyze JWCF's independent contacts with Illinois for purposes of the general jurisdiction analysis.

established to do business for JWCF in Illinois and that JWCF controls SMC LLC's business. (R. 60, Plfs.' Resp. at 9-12.)

In Illinois, an exercise of jurisdiction over a foreign parent corporation based on its subsidiary's contact with the forum state is proper where "where the corporate veil can be pierced" or "where all the corporate formalities are observed but the subsidiary's only purpose is to conduct the business of the parent." *See Central States v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000) (citing *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 541 (7th Cir. 1998)). Plaintiffs do not argue that the Court should pierce the corporate veil.[6] Rather, they argue that general jurisdiction is proper under the so-called *Maunder* theory, pursuant to which a court may exercise jurisdiction over a nonresident parent corporation where the subsidiary is "acting as the parent corporation's Illinois agent in the sense of conducting the parent's business rather than its own." *Old Orchard Urban Ltd.*, 389 Ill. App.3d at 66, 904 N.E.2d at 1059 (citing *Alderson v. Southern Co.*, 321 Ill. App.3d 832, 854, 747 N.E.2d 926, 944 (2001)); *see also Maunder v. DeHavilland Aircraft of Canada*, 102 Ill.2d 342, 352-53, 466 N.E.2d 217, 222-23 (1984)).

It is well-established in the Seventh Circuit that "personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over

---

[6] In Illinois, piercing the corporate veil requires a plaintiff to demonstrate that the subsidiary "is so controlled, and its affairs so conducted by a parent that observance of the fiction of separate identities would sanction a fraud or promote injustice." *Old Orchard Urban Ltd. v. Harry Rosen, Inc.*, 389 Ill. App.3d 58, 71, 904 N.E.2d 1050, 1061-62 (1st Dist. 2009). Piercing the corporate veil is a distinct analysis from the *Maunder* agency theory of jurisdiction, which is discussed below. *Id.*

the subsidiary." *Reimer Express World Corp.*, 230 F.3d at 943. The "critical question" under the *Maunder* theory "is whether the Illinois subsidiary exists for no purpose other than conducting the business of its parent." *Alderson*, 321 Ill. App.3d at 855, 747 N.E.2d at 944. The determination "does not turn on whether the distinction of separate corporate identities has been blurred." *Old Orchard Urban Ltd.*, 389 Ill. App.3d at 66, 904 N.E.2d at 1056. In *Alderson*, the Illinois Appellate Court stated that jurisdiction over a foreign parent under *Maunder* is conferred where the parent is "merely a holding company that has established many subsidiaries to carry out its business" or is an "umbrella company" that exists "merely to bid on projects or investments, merely for tax purposes, or to own the assets" through which the parent conducts its business ventures. *Id.*; *see also IDS Life Ins. Co.*, 136 F.3d at 541 ("If the subsidiaries were acting as [the parent's] Illinois agent in the sense of conducting [the parent's] business rather than their own business, the parent could be sued.") (citing, among other cases, *Maunder*, 102 Ill.2d 342, 466 N.E.2d 217).

### A. SMC LLC was not JWCF's "service arm" in the Illinois market

Plaintiffs maintain that JWCF is subject to personal jurisdiction in Illinois because SMC LLC acts as JWCF's "service arm" in the Illinois market. (R. 60, Plfs.' Resp. at 10, citing *Japax, Inc. v. Sodick Co. Ltd.*, 186 Ill. App.3d 656, 664, 542 N.E.2d 792, 797 (1st Dist. 1989).) In support of their argument, Plaintiffs state that JWCF operated in the Illinois market in 2006 and 2007, and they contend that SMC LLC was established "to separate [JWCF] on paper from the Illinois market." (Plfs.' Resp. at 10.) Plaintiffs further state that JWCF (1) hired SMC LLC's technicians; (2) filed tax returns in Illinois; (3) computed SMC LLC's technicians' wages; (4) prepared SMC LLC's invoices to Comcast; (5) paid bills on behalf of SMC LLC; (6) prepared a

"gamut" of financial and productivity reports for work SMC LLC performed in the Illinois

market; and (7) assigned one of its executives the task of directly overseeing SMC LLC's

operations in the Illinois market. (*Id.* at 11.)

Plaintiffs aver repeatedly throughout their brief, without citations to or support in the

record, that JWCF "hired" technicians for SMC LLC. *See id.* at 11-13. JWCF, however, has

submitted evidence that SMC LLC "made all employment decisions relating to its business,

including the decision to hire, fire, promote and discipline employees, to assign work and to

determine the rate and method of compensating employees." (Baker Decl. ¶¶ 55-56.) Plaintiffs

point to no evidence to the contrary. Instead, Plaintiffs cite evidence showing that JWCF

performed certain human resource functions for SMC LLC, including advertising job openings,

conducting initial screening interviews, and performing background checks on technicians, *see*

Plfs.' Resp. at 8, which JWCF does not dispute. (R. 57, JWCF's Mem. at 5-6.) That evidence,

however, does not support a broad assertion that JWCF "hired" technicians, and it does not

contradict JWCF's evidence that it "made all employment decisions relating to its business,

including the decision to hire, fire, promote and discipline employees, to assign work and to

determine the rate and method of compensating employees." Plaintiff Zimmerman discusses his

employment in a sworn Declaration he submitted in support of Plaintiffs' response brief. Among

other things, he stated that he obtained his job as a technician by responding to a "Baker

Installations" job advertisement and that "Baker Installations" interviewed him over the phone

from their Pennsylvania headquarters. (Zimmerman Dec. ¶¶ 2, 4.)[7] These statements, however,

---

[7] Plaintiff Zimmerman stated that he was employed by "the Company," which he defines as SMC LLC and "Baker Installations," collectively, and he further stated that he understood Baker Installations and SMC LLC to be the same company. (Zimmerman Decl. ¶¶ 2, 4.) This

do not indicate that JWCF hired him or that JWCF determined the rate or method by which SMC LLC compensated him. Therefore, they do not contradict JWCF's proffered evidence.

Although Plaintiffs' assertion that JWCF "paid bills on behalf of SMC LLC" is technically accurate, JWCF explains with uncontested evidence that it "did nothing more than carry out the administrative function of printing and sending checks drawn on SMC [LLC]'s bank account to SMC [LLC]'s vendors." (R. 63, JWCF's Reply at 4, citing Baker Dep. 109; Baker Decl. ¶¶ 51-52)). Indeed, it is undisputed that JWCF and SMC LLC maintained separate bank accounts and separate books (Baker Decl. ¶ 48), and SMC LLC paid expenses out of its own bank account. (*Id.* ¶ 49). Moreover, SMC LLC paid JWCF for its administrative services. (*Id.* ¶ 59). Because a parent corporation "may provide administrative services for its subsidiary in the ordinary course of business without undermining corporate separateness and triggering personal jurisdiction over the parent," *Reimer Express World Corp.*, 230 F.3d at 945, JWCF's rendering of administrative services does not undermine corporate separateness here. The same reasoning applies to the uncontested facts that JWCF printed and sent checks to SMC LLC's vendors, prepared SMC LLC's invoices to Comcast, and prepared SMC LLC's financial and productivity reports. *See id.* (explaining that "parent corporations regularly provide certain services to their subsidiaries," and holding that they are "not sufficient minimum contacts to support the exercise of jurisdiction").

---

understanding does not, however, support an assertion that any entity other than SMC LLC employed Mr. Zimmerman because SMC LLC had license to use the "Baker Installations" trademark and trade name in Illinois. (Baker Decl. ¶ 30.) Moreover, Plaintiffs concede that SMC LLC employed the Plaintiffs in this case. *See* Plfs.' Resp. at 9 ("SMC employed the plaintiff cable installers in Illinois") and at 13 ("The wage and hour claims at issue in this lawsuit arose out of work installers performed for SMC in Illinois").

Plaintiffs' argument that JWCF "computed" SMC LLC's technicians' wages also misses the mark because the unrefuted evidence in the record shows that JWCF had no involvement in establishing SMC LLC's pay policies, nor did it determine the method or rate of compensation for SMC LLC's cable installation technicians. (Baker Decl. ¶ 52.) Further, SMC LLC's employees in Illinois were responsible for entering the necessary data into the computer system from which SMC LLC issued paychecks. (*Id.*; R. 60-3, Bronzenec Dec. ¶¶ 7-8.) JWCF's only involvement with respect to SMC LLC's payroll was administrative in nature–i.e., computing the pay according to SMC LLC's policies and printing the payroll checks.[8]

JWCF's filing of tax returns in Illinois (and accounting for SMC LLC's profits) also does not undermine the corporate separateness of SMC LLC and JWCF. As JWCF explained in its reply brief, a single-member LLC (such as SMC LLC) is classified by default under federal and state tax regulations as a "disregarded entity," and its profits are taxed as part of the profits of its single member (here, JWCF). (JWCF's Reply at 4; *see also* Baker Decl. ¶ 65; 26 C.F.R. § 301.7701-3(a); 86 Ill. Admin. Code tit. § 100.9750(b)(1)(A); IRS Form 8832, Entity Classification Election at 5.) Further, JWCF submitted evidence, which Plaintiffs have failed to refute, that SMC LLC paid all of the Illinois taxes. (Baker Decl. ¶ 65.) Plaintiffs do not cite to, and the Court is not aware of, any authority holding that personal jurisdiction over a foreign parent is appropriate simply because the parent filed a tax return in the state where its subsidiary does business.

---

[8] JWCF likened the payroll services it provided to SMC LLC to those that ADP (a well-known third party payroll vendor) might provide to a company. *See* JWCF's Reply at 4; Baker Dep. 95:13-16; 19-24.

Plaintiffs make much of the fact that JWCF's Vice President of Client Relations, Ms. McClain, was also the Vice President of Client Relations for SMC LLC. The existence of common officers of both the parent and the subsidiary, however, is insufficient to exercise personal jurisdiction over the nonresident parent. *See Old Orchard*, 389 Ill. App.3d at 67, 904 N.E.2d. 1059 (citation omitted) (personal jurisdiction not conferred where foreign parent and domestic subsidiaries shared officers and directors); *see also Alderson*, 321 Ill. App.3d at 854; 747 N.E.2d at 944-45 (the existence of officers or directors servicing both corporations is not sufficient to confer jurisdiction over a nonresident parent corporation) (citation omitted). According to evidence JWCF submitted, Ms. McClain, in her capacity as Vice President of Client Relations for SMC LLC, reported to SMC LLC's managers. (McClain Dep. 26:9-16.) Moreover, SMC LLC, and not JWCF, paid Ms. McClain's salary and travel expenses during the time she worked for SMC LLC. (McClain Dep. 42:11-17; Baker Decl. ¶ 61; McClain Decl. ¶¶ 8-10.) Plaintiffs do not refute these facts. Ms. McClain's role does not confer personal jurisdiction over JWCF. *See Reimer Express World Corp.*, 230 F.3d at 946 ("[w]hen the parent receives compensation for the subsidiary's use of the services of an employee of the parent, the employee acts on behalf of the subsidiary and not the parent, and the employee acts at the direction of the subsidiary's officers, the parent, at most, provides standard administrative services to the subsidiary" and "is not a sufficient minimum contact").

Plaintiffs analogize this case to *Japax*, 186 Ill. App.3d at 664-65; 542 N.E.2d at 797, but the facts are readily distinguishable. In *Japax*, the court found that the subsidiary functioned as the "service arm" of the foreign parent corporation because the subsidiary sold the parent company's products in Illinois, and because the parent "loaned" employees to the subsidiary

(accounting for a significant portion of the subsidiary's domestic personnel) and loaned money to or guaranteed millions of dollars on behalf of the subsidiary. *Id.* The court also found that the parent's employees frequently came to the United States and Illinois to train the subsidiary's personnel, to assist in the subsidiary's service activities, and to attend trade shows. *Id.* The court further found that the subsidiary's officers reported to the parent's executive managing director. *Id.*

In contrast, there is no evidence in this case that JWCF "loaned" employees to SMC LLC or that JWCF had the responsibility for any of SMC LLC's financial obligations. Although Ms. McClain worked for both JWCF and SMC LLC, it is uncontested that SMC LLC ultimately paid for her services, whether directly or through reimbursing JWCF. Further, SMC LLC had its own employees and officers, including Mr. Allen and Mr. Sherry, who ran its day-to-day operations and were not employees of or otherwise affiliated with JWCF. (Baker Decl. ¶¶ 42-43.) SMC LLC employed its own cable installation technicians, including Plaintiffs, who reported to SMC LLC supervisors in Illinois. (*Id.* at ¶ 44.) Mr. Baker, JWCF's CFO, recalled only one instance during the relevant time period where he traveled to Illinois for the purpose of attending a formal meeting, and even then, he was acting in his capacity as a manager of SMC LLC. (*Id.* ¶ 64.) His other visits to Illinois during the relevant time period were social in nature. (*Id.* ¶ 63.) Mr. Mazur, another of SMC LLC's managers, traveled to Illinois on only one occasion to attend industry events, and he attended on SMC LLC's behalf. (McClain Decl. ¶ 14.)

Additionally, the uncontested evidence shows that SMC LLC did not conduct business for JWCF. Instead, it conducted business for Comcast, with which it contracted to provide cable installation services in Illinois. (Baker Decl. ¶ 31.) Indeed, SMC LLC's Vice President of

Operations, Mr. Sherry, already had a successful cable installation business in Illinois and a subcontractor relationship with Comcast before either JWCF or SMC LLC was incorporated. (*Id.* ¶¶ 6-7, 20.) JWCF was not a party to the contract between SMC LLC and Comcast. (*Id.* ¶ 31.) In fact, SMC LLC never entered into an agreement with JWCF to provide cable services in Illinois, and SMC LLC never performed any cable installation services for JWCF. (*Id.* ¶ 35.) It cannot, therefore, be said that SMC LLC exists "for no purpose other than conducting the business of" JWCF. *See Alderson*, 38 Ill. App.3d at 66, 904 N.E.2d at 1058.

## B. JWCF did not control SMC LLC's business

Plaintiffs rely on many of the same facts for their "service arm" argument as they do for their "control" argument, and therefore the Court's analyses do not vary significantly. They argue that JWCF executives and employees operated in the Illinois market, but the uncontested evidence shows that the only JWCF employee who had a role in the day-to-day operation of SMC LLC was Ms. McClain.[9] She held the title of Vice President of Client Relations with SMC LLC and acted in that capacity when she performed work for that entity. Moreover, she reported to the three managers of SMC LLC in her role as Vice President of Client Relations for SMC LLC. She, along with Mr. Sherry and Mr. Allen, who were employed by SMC LLC and who were not affiliated with JWCF, ran SMC LLC's day-to-day operations. (Baker Decl. ¶¶ 42-43.) The fact that Ms. McClain, Mr. Sherry and Mr. Allen at times reported on the status of SMC LLC's operations in Illinois or attended meetings with JWCF employees does not mean that

---

[9] Plaintiffs argue that John Shedd, a Vice President for JWCF, "traveled to Illinois on at least one occasion to monitor how the Illinois office staff entered technician jobs and hours onto the Rumba system." (Plfs.' Resp. at 5.) Plaintiffs citations to the record, however, do not support their assertion. Moreover, their citations affirm that Mr. Shedd had no role at SMC LLC. *See* McClain Dep. at 80:24-81:5.

JWCF had "an unusually high degree of control" over SMC LLC. *See Reimer Express World Corp.*, 230 F.3d at 943; *Old Orchard*, 389 Ill. App. at 66, 904 N.E.2d at 1060 ("Parents of wholly owned subsidiary corporations necessarily control and direct the activities of the subsidiaries to some extent[.]") (citing *Alderson v. Southern Co.*, 321 Ill. App.3d 832, 854, 747 N.E.2d 926, 944 (2001)).

Plaintiffs have not met their burden of showing that JWCF exercised the requisite degree of control over SMC LLC's business. The evidence indicates that SMC LLC employees ran its day-to-day operations, and Plaintiffs have failed to refute that evidence. Therefore, the Court cannot exercise general personal jurisdiction over JWCF.

## II.     Specific Jurisdiction

Plaintiffs also argue that JWCF is subject to specific jurisdiction in Illinois. "Specific personal jurisdiction is appropriate when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010). In deciding whether the Court may exercise specific jurisdiction over JWCF, the Court must 1) identify JWCF's contacts with Illinois; 2) analyze whether those contacts meet constitutional minimums and whether exercising jurisdiction on the basis of the minimum contacts sufficiently comports with fairness and justice; and 3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action in Plaintiffs' suit. *See Reimer Express World Corp.*, 230 F.3d at 944.

Plaintiffs set forth two separate specific jurisdiction arguments. First, they claim that JWCF is subject to specific jurisdiction in Illinois under *Maunder* because of its alleged involvement with SMC LLC's pay policies at issue in this case. (Plfs.' Resp. at 13.) Second,

they argue that JWCF is subject to specific jurisdiction because of its independent contacts with Illinois. (Plfs.' Resp. at 12-13.)

**A.    JWCF is not subject to specific personal jurisdiction under *Maunder***

For many of the same reasons JWCF is not subject to general personal jurisdiction based on its parent-subsidiary relationship with SMC LLC, JWCF is not subject to specific jurisdiction. This case is about SMC LLC's pay policies and the compensation it allegedly paid (or did not pay) to Plaintiffs and other members of the putative class. (Compl., *passim*.) As discussed above, the unrefuted evidence shows that JWCF had no involvement in establishing SMC LLC's pay policies, nor did it determine the method or rate of compensation for SMC LLC's cable installation technicians. (Baker Decl. ¶ 52.) Further, SMC LLC's employees in Illinois were responsible for entering the necessary data into the computer system from which SMC LLC issued paychecks. (*Id.*; R. 60-3, Brozenec Decl. ¶¶ 7-8.) JWCF's only involvement with respect to SMC LLC's payroll was administrative in nature. Those facts render this case unlike the facts in *Hundt v. DirectSat USA, LLC*, No. 08 C 7238, 2010 WL 1996590 (N.D. Ill. May 17, 2010), on which Plaintiffs rely. (Plfs.' Resp. at 13.) In *Hundt*, the plaintiffs (who were represented by the same counsel as Plaintiffs in this case) sought leave to amend their complaint to add additional parties. In discussing whether amendment would be futile based on lack of personal jurisdiction, the court concluded that a party who set the pay policies at issue in the lawsuit and who admitted to "devising, directing, implementing, and supervising the wage and hour practices and policies relating to employees," including the plaintiff, would be subject to personal jurisdiction in Illinois. *Id.* at *5. In this case, however, there is simply no evidence from which the Court could conclude that JWCF had any involvement with, let alone exercised an "an unusually high degree

of" control over, SMC LLC's pay policies at issue in this case.

**B.  JWCF is not subject to specific personal jurisdiction by virtue of its independent contacts with Illinois**

The Court disagrees with Plaintiffs' argument that JWCF had sufficient minimum contacts with Illinois to confer specific personal jurisdiction over it.  Plaintiffs argue that JWCF "computed the wages paid to Illinois technicians," relying on testimony from Ms. Brozenec, Ms. McClain, Mr. Baker and Mr. Zimmerman.  (Plfs.' Resp. at 6, 13-14.)  As stated above, however, this evidence shows, at most, that JWCF performed the administrative function of computing wages according to policies SMC LLC set and using data SMC LLC employees entered into the computer system.  (*See, e.g.*, Brozenec Decl. ¶ 8.)  The evidence does not prove that JWCF had any role in establishing SMC LLC's payroll policies at issue in this case.  Indeed, the uncontested evidence demonstrates that SMC LLC established its own payroll policies.  (Baker Decl. ¶¶ 52, 55.)  Moreover, the fact that SMC LLC technicians were instructed to raise issues regarding their pay with JWCF employees (*see* Zimmerman Decl. ¶ 6) does not undermine the fact that SMC LLC set the pay policies and made all employment decisions.  As discussed above, Plaintiffs' assertion that JWCF "hired" SMC LLC's technicians is unsupported by its own evidence and contradicted by the evidence JWCF has set forth, which shows that SMC LLC made all decisions with respect to hiring and firing its employees.  (*Id.* ¶ 55.)

JWCF did not have sufficient minimum contacts with Illinois during the relevant period, and accordingly, the Court will not exercise specific jurisdiction over it.  Because the Court finds that JWCF did not have sufficient minimum contacts with the State of Illinois, the Court need not undertake an analysis of whether exercising jurisdiction over JWCF will offend the notions of fair play and substantial justice.

## CONCLUSION

For the reasons set forth above, the Court grants JWCF's motion to dismiss for lack of personal jurisdiction. The motion is granted with prejudice as to Plaintiffs' ability to refile this lawsuit against JWCF in Illinois.

**Date:** September 28, 2011

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**